# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LCT CAPITAL, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. N15C-08-109 JJC CCLD |
| | : | |
| NGL ENERGY PARTNERS LP and | : | |
| NGL ENERGY HOLDINGS LLC, | : | |
| | : | |
| Defendants. | : | |

Submitted: January 25, 2023
Decided: January 30, 2023

## ORDER

On this 30th day of January 2023, after considering the parties' positions regarding the admissibility of evidence in the new trial, it appears to the Court that:

1. In 2015, Plaintiff LCT Capital, LLC ("LCT") sued Defendants NGL Energy Partners LP, and NGL Energy Holdings LLC (collectively "NGL") for breach of contract, fraud, and quasi-contractual damages. Initially, LCT's quasi-contractual claims included unjust enrichment and *quantum meruit*. After a first trial, post-trial decisions, and an interlocutory appeal, only a *quantum meruit* claim remains. Jury selection for a second trial will be on February 2, 2023, and it will begin on February 6, 2023.

2. At this stage of the litigation, the Superior Court's and the Supreme Court's prior decisions provide a tripartite law of the case. First, the Superior Court's undisturbed rulings before, during, and after the first trial control.[1] Second, the Delaware Supreme Court's decision on an interlocutory appeal commands

---

[1] *See e.g.*, *LCT Capital, LLC v. NGL Energy Partners LP*, 2019 WL 6896463 (Del. Super. Dec. 5, 2019).

primacy regarding the issues it either explicitly or implicitly decided.[2]  Third, the Superior Court's recent decision regarding the parties' motions *in limine*, issued on December 22, 2022 (the "December decision"),[3] provides the evidentiary road map for next week's trial.

3.      The Court's forty-page December decision decided five motions *in limine* and navigated the parties' numerous contentions.  Namely, it granularly and carefully examined *Daubert* issues, issues of relevance based upon claims now removed from the case, and Delaware Rule of Evidence 403 concerns.

4.      To navigate the law of the case, the Court first looks to the Delaware Supreme Court's explanation of the doctrine:

> the law of the case doctrine is a self-imposed restriction that prohibits courts from revisiting issues previously decided, with the intent to protect "efficiency, finality, stability, and respect for the judicial system." . . .  The doctrine is not an absolute restriction, and it allows the Superior Court . . . to reexamine issues that are "clearly wrong, produce[] an injustice[,], or should be revisited because of changed circumstances.[4]

Here, the tripartite law of the case, when considered in its entirety, requires the Court to revisit one issue decided in the December decision.

5.      To explain why it is necessary to do so, the Court first summarizes the nature of the two quasi-contractual claims that LCT originally pled.  First, a contract implied in law may provide for a quasi-contractual claim for unjust enrichment. Damages under that mechanism turn on the *value of unfair gain enjoyed by the defendant*.[5]    In that respect, it has more of a punitive and equitable flavor.  LCT's claim for unjust enrichment no longer remains as part of the case.

---

[2] *LCT Capital, LLC v. NGL Energy Partners* LP, 249 A.3d 77, 80 (Del. 2021); *see also Estate of Krieger v. AmGuard Insurance Co.*, 2021 WL 733442, at *2 (Del. Super. Feb. 25, 2021) (recognizing that the doctrine encompasses matters both explicitly and implicitly decided).
[3] *LCT Capital, LLC v. NGL Energy Partners LP*, 2022 WL 17851423 (Del. Super. Dec. 22, 2022).
[4] *State v. Wright*, 131 A.3d 310, 321 (Del. 2016) (citations omitted).
[5] *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).

6. A second quasi-contractual claim provides recovery in *quantum meruit.* Recovery in *quantum meruit* turns on the *value of the plaintiff's services to the defendant.*[6] The phrase translates literally to "as much as he deserves."[7] The measure of value of the services must be "based on the facts of the case, as to the worth of *the specific services* rendered to the defendant[]."[8] The difference between unjust enrichment and *quantum meruit* claims distills to whether the plaintiff recovers for (1) the value of the benefits unjustly provided to the defendant (in the case of unjust enrichment), or (2) the value of the plaintiff's services (in the case of *quantum meruit*). In some cases, such as this one, the same evidence is admissible to prove both claims. In other cases, evidence offered to prove one may be separately inadmissible to prove the other.

7. Here, the Court's December decision bars LCT from attempting to prove the value that LCT added to NGL's acquisition. When doing so, it believed such value to no longer be relevant because no claim for unjust enrichment remains. LCT's claim seeks *quantum meruit* damages, however, for highly specialized and particularized investment banking services that it provided to NGL. In such a case, the appropriateness of a flat fee for LCT's services, as urged by NGL's expert, Ms. Lancaster, is not a foregone conclusion. Apart from Ms. Lancaster's testimony, there is evidence of record that supports an inference that the value of LCT's services cannot be reduced to such a flat fee. In fairness, the jury must be permitted to consider the increased value LCT added to the TransMontaigne acquisition when it decides how much LCT "deserves."

8. Along those same lines, the Supreme Court's decision in this case recognized that "LCT played an unusually valuable role in the transaction."[9]

---

[6] *Marta v. Nepa*, 385 A.2d 727, 730 (Del. 1978).
[7] *Hynansky v. 1492 Hospitality Group, Inc.*, 2007 WL 2319191, at *1 (Del. Super. Aug. 15, 2007).
[8] *Id.* (emphasis added).
[9] *LCT Capital,* 249 A.3d at 80.

3

Elsewhere in the decision, the Supreme Court recognized that LCT's efforts were "extraordinary," "unique," and "critical," based upon the evidence presented at the first trial. [10] If the jury finds that LCT's efforts were unique, extraordinary, and critical in the retrial, it can permissibly place a value on those efforts when it determines how much LCT deserves.[11] After all, the *sole* goal of LCT's services was to increase the deal's value for NGL. It follows that for such unique, or one-of-a-kind, services, LCT should not be precluded from presenting evidence or argument that the reasonable value of its services cannot be ascertained without understanding the value it added to NGL's acquisition.[12]

9. To determine whether evidence is admissible, the Court must first ask the proponent to explain what he or she offers that evidence to prove. The answer dictates the relevancy of the evidence, and steers the balancing required by DRE 403. Here, LCT, does not offer the evidence of the value that it added to the TransMontaigne acquisition to prove NGL's unjust enrichment. Rather, it offers the evidence to prove the value of LCT's services given their unique character. Again, the relevance is properly viewed in the context of the goal of the services at issue – to add value to NGL's deal. Because the evidence is highly probative when offered to prove the value of what LCT did for NGL, and since a limiting instruction can adequately mitigate unfair prejudice, the Court modifies its previous decision of December 22, 2022, to clarify that such evidence is admissible.

---

[10] *Id*. at 82, 101.

[11] The December decision incorrectly treats evidence of the value that LCT added to the deal as irrelevant because the Court dismissed LCT's unjust enrichment claim.

[12] While the Court recognizes LCT's argument that the Supreme Court's decision in *Marta v. Nepa*, 385 A.2d 727 (Del. 1978) could be read to preclude evidence of a typical commission or fee in this case, the Court will not revisit the December decision's ruling that Ms. Lancaster's opinion is admissible. She is expected to testify that a typical banker investment fee of .5 to 2 percent appropriately values LCT's services. The jury will be free to accept or reject her opinion. Similarly, it would be manifestly unfair to preclude LCT from presenting alternative evidence about how much value LCT's services provided NGL, since the goal of LCT's services, as indicated *supra*, was to increase value for NGL.

10.     This ruling has at least one important implication regarding a central piece of evidence.   Namely, the December decision found Mr. Krimbill's letter of October 24, 2014   (the "letter") inadmissible, at least in critical part.[13]     The December decision also precluded one of LCT's experts, Mr. McQuilken, from discussing the letter in his testimony.[14]   Mr. Krimbill wrote the letter in his capacity as Chief Executive Officer of NGL.  In it,  he recommended to NGL's owners that a certain buy-in arrangement for LCT was equivalent "to a $ 29 million success fee . . . [and was] a fair arrangement [to compensate LCT for its services]. . . as we never would have had this opportunity at our price without LCT bringing it to us."   The letter assumed center stage in the first trial.[15]  Next, after the first trial and on appeal, the  Supreme Court quoted the letter approvingly when it recognized that a *quantum meruit* claim survived.[16]   Here, the reasonable value of LCT's services *may,* in large part, depend on the value that LCT brought to NGL.  When offered for that purpose, the letter is a highly relevant admission by a party opponent that the value of LCT's services was equivalent to $29 million.[17]   Accordingly, it would be manifestly unfair to exclude important portions of the letter from evidence because those portions directly address what is in controversy.   On balance, the letter is relevant, no DRE

---

[13] *Id*. at *22–23.

[14] *Id*.

[15] *See LCT Capital*, 249 A.3d at 101, n.188 (quoting LCT's closing argument that addressed in detail the importance of Mr. Krimbill's  $29 million valuation found in the letter).

[16] *Id*. at 100.

[17] NGL's arguments that the Court should exclude the letter because it interjects subjective opinion into what should be an objective determination is not availing for two reasons.  First, there was never a contract, so there is no integrated agreement that generates parol evidence considerations. Nor does the objective theory of *contract* apply because there was no contract.  Second, and more directly, the Delaware Rules of Evidence directly contemplate that an admission against interest includes the beliefs and opinions of a party-opponent if they are offered against the opponent's interest.  D.R.E. 801(d)(2)(D).

403 concerns substantially outweigh its relevance, and it is non-hearsay as an admission.[18]

11. Apart from the letter and other NGL statements that may qualify as admissions regarding the value of LCT's services, this modification does little to alter the litigation's landscape. All other aspects of the case remain controlled by the December decision, with only these minor adjustments.

12. For instance, the permitted scope of Mr. McQuilken's proposed testimony remains nearly unchanged. In the December decision, the Court barred some of his opinions under *Daubert* as *ipse dixit* and as otherwise lacking foundation. [19] Those *Daubert*-based decisions provide that LCT may not offer Mr. McQuilken's opinions (1) that a reasonable fee range in this case would have been between $43.8 and $60 million, or (2) any other calculation that reduces his opinion regarding value to a firm figure.[20] Nevertheless, it would be inappropriate to preclude an expert from testifying about a document that is in evidence. He may explain the terms in the letter and how the equity buy-in proposal could have worked, as well as how the mechanism could have equated to a $29 million finder's fee as Mr. Krimbill acknowledged. Furthermore, as provided in the December decision, he may also explain the unique nature of LCT's services, and opine why he believes those services warrant a greater fee than would be available in standard investment banking efforts. [21]

13. The Court recognizes that admitting evidence regarding the value that LCT brought to this transaction risks prejudicing NGL. Any admission by a party-

---

[18] The Court will entertain further argument from the parties regarding the possible redaction of paragraph one from the letter because it references value creation *after* the purchase, or, in the alternative, it will consider an additional limiting instruction to mitigate jury confusion. It will also consider any requested redactions from the letter referencing Energy Minerals Group because it is not a party to the case.

[19] *LCT Capital*, 2022 WL 17851423 at *14–16.

[20] *Id*. at 15, 17.

[21] *Id*. at 16, 18.

opponent that damages could be as high as $29 million may cause NGL prejudice. Likewise, NGL's proposed expert testimony that a standard investment banker fee would be appropriate (as low as $1 million), may prejudice LCT. *Unfair* prejudice is the catchphrase, however. In this case, DRE 403 concerns do not substantially outweigh the relevance of either parties' proffers. Nevertheless, because the Court recognizes that there is a risk of jury confusion, and unfair prejudice to NGL based upon "value added" evidence, the Court will entertain a request by NGL for appropriate limiting instructions both during trial and in the final charge. Such instructions may include, but not be limited to, telling the jury that: (1) the evidence of value added to the acquisition is offered only for the limited purpose of showing the reasonable value of LCT's services to NGL; (2) the jury cannot consider such evidence to conclude that the two reached an agreement on compensation, because they did not as a matter of law; and (3) the jury may not consider the evidence for any purpose other than for the limited purpose for which it was offered.

**WHEREFORE**, the Court's decision of December 22, 2022, is modified as set forth above. All other aspects of the December decision will control the parties' presentations at trial.

**IT IS SO ORDERED.**

/s/ Jeffrey J Clark
Resident Judge

JJC:klc
*Via File & Serve Express*