# SUPERIOR COURT
## of the
# STATE OF DELAWARE

Jeffrey J Clark
　Judge

Kent County Courthouse
38 The Green
Dover, DE 19901
Telephone (302)735-2111

February 25, 2021

Mr. John S. Spadaro, Esquire
John Sheehan Spadaro, LLC
54 Liborio Lane
P.O. Box 627
Smyrna, DE 19977

John D. Balaguer, Esquire
White and Williams LLP
600 North King Street, Suite 800
Wilmington, DE 19801

RE:　*Estate of Mark Krieger vs. AmGuard Insurance Company*
　　*K17C-11-003 JJC*

Counsel:

This is the Court's decision regarding Defendant AmGuard ("AmGuard")'s five motions *in limine*. As background, The Estate of Mark Krieger (the "Estate") sued AmGuard for alleged bad faith delay in paying Mr. Krieger's workers' compensation benefits. The parties tried the matter before a jury over five days in October 2019. The jury found that AmGuard delayed investigation and payment of the claim in bad faith. Moreover, it found that AmGuard recklessly disregarded Mr. Krieger's rights when doing so. As a result, it awarded his Estate $500,000 in punitive damages. After the verdict, based upon the jury's responses to special interrogatories, the parties stipulated to the calculation of compensatory damages: $28.22 due the Estate based on interest for the delayed payments.

Post-trial, AmGuard moved for judgment as a matter of law, and alternatively for a new trial. As the Court explained in its earlier Opinion, judgment as a matter of law was inappropriate.[1] The Court ordered a new trial, however, because the jury's $500,000 punitive damages award shocked its conscience given the evidence at trial and the size of the compensatory award.[2] Furthermore, because the Estate's counsel repeatedly made inflammatory statements in closing argument and argued matters that did not flow from reasonable inferences from the evidence, the Court determined that the jury based its excessive award upon passion or prejudice.[3] Accordingly, the Court ordered the new trial to include both liability and damages.[4]

Presently, AmGuard files five motions seeking to bar arguments and evidence from the retrial. The Estate responds with two general arguments that it applies to multiple motions: (1) first, it contends that because AmGuard failed to object in the first trial to many of these items, it waived its right to do so in the new trial; (2) second, it emphasizes that the law of the case controls some of the issues.

Here, the Court will first address these two general arguments. It will then address each motion in turn.

**Waiver of Arguments and Law of the Case**

The Estate contends that because AmGuard failed to object to many of the Estate's arguments and questions in the first trial, AmGuard waived its right to object to them in the new trial. In response, AmGuard correctly contends that when the Court grants a new trial, it in large part "wipes the slate clean."[5] Because civil

---

[1] *Powell v. AmGuard Ins. Co.*, 2020 WL 996734, at *4 (Del. Super. Mar. 2, 2020).

[2] *Id*. at *9-14.

[3] *Id*. at *13-14.

[4] *Id*. at *14.

[5] *See State v. Roberts*, 1985 WL 444602, at *2 (Del. Com. Pl. Nov. 21, 1985) (citing *Commonwealth v. Oaks*, 392 A.2d 1324, 1326) (explaining that when a new trial is granted, it sets aside a prior judgment as if no trial had occurred); *see also Wilkins v. Methodist Health Care*

2

discovery is so comprehensive and because a verbatim trial record becomes available, a new trial often closely tracks the first trial. Nevertheless, in a new trial, new evidence may arise, phrasing of questions may be different, witnesses may testify differently, and trial tactics and even strategies may change. As a result, a party's failure to object to questions or arguments in a first trial should not bar it from objecting to them in the second trial.

Furthermore, an additional practical concern applies in this case. Namely, the Court ordered a new trial because of the Estate's inflammatory arguments in the first trial. It would be both illogical and judicially uneconomical to prohibit AmGuard from objecting to these matters when the Estate's inflammatory arguments were the cause of the new trial. For this additional reason, AmGuard's prior failure to object does not prospectively waive its objections in the new trial.

Regarding the law of the case, the Estate correctly contends that Court rulings in the first case often bind the parties in the second. The law of the case doctrine prevents a court from rehashing issues it previously decided. It aims to promote "efficiency, finality, stability and respect for the judicial system."[6] The doctrine is primarily an appellate one. Nevertheless, trial courts also apply the doctrine to their prior rulings.[7] When doing so, they must have fully heard the parties on the matter. Furthermore, the issue must have been "actually decided" in order to trigger the doctrine.[8] This component expands to cover both explicitly and implicitly decided matters.[9] Accordingly, if the parties raised an issue in the first trial that the Court

---

*Sys.*,160 S.W.3d 559, 563 (Tex. 2005) ( recognizing that "when the trial court grants a motion for new trial, the court essentially wipes the slate clean and starts over.").

[6] *State v. Wright*, 131 A.3d 310, 321 (Del. 2016) (citation omitted).

[7] *See New Castle Cty. v. Pike Creek Recreational Servs., LLC*, 82 A.3d 731, 744–45 (Del. Ch. 2013), *aff'd,* 105 A.3d 990 (Del. 2014) (applying the law of the case doctrine from prior oral bench rulings to matters the parties raised subsequently through briefing).

[8] *Wright*, 131 A.3d at 321 (citation omitted).

[9] *Id*.

either explicitly or implicitly decided, the issue is settled for purposes of the second trial.

## Motion to Bar Inflammatory and Unsupported Statements by Counsel

AmGuard requests that the Court limit the Estate's arguments in the second trial. When doing so, it focuses on Estate arguments that the Court did not address in its new trial Opinion. Namely, it contends that many were either inflammatory or not based upon reasonable inferences flowing from the evidence.

For instance, the Estate's inflammatory arguments in the first trial included references to AmGuard executives and employees as "filth", and suggestions that its executives "light their cigars" with the amount of money withheld from Mr. Krieger.[10] They also included statements by counsel accusing AmGuard, as the opposing party, of attempting to make "fools" of the jurors.[11] The Opinion identified multiple additional inflammatory statements that the Court finds distracted the jury from its role.[12] The Estate's counsel demeanor, when raising some of these arguments, also included a raised voice to nearly the point of shouting, and crying on at least one occasion.

Furthermore, the Estate's arguments were at times completely disconnected from the evidence. For instance, the Estate argued that AmGuard's delay had various ruinous effects on Mr. Krieger and caused him great despair. No evidence supported those arguments. Rather, Mr. Krieger passed away before trial and before the parties could take his deposition. Neither he nor any family member or friend testified regarding what effect the delayed payment had on him. Absent such evidence, the Estate's arguments regarding those matters were inappropriate.

---

[10] *Powell*, 2020 WL 996734, at *12-13.
[11] *Id.*
[12] *Id.*

4

After considering the Estate's arguments and briefing regarding these motions *in limine*, the Court maintains some concern because the Estate continues to argue that many of these arguments were proper, while promising to revisit the issue on appeal. It may certainly appeal the Court's decision -- that unquestionably is its right. Nevertheless, in the meantime, the Court's prior Opinion and Delaware Rule of Professional Conduct 3.4 (e) will provide the necessary guideposts regarding counsel's conduct in the upcoming trial.[13]

After providing these necessary observations, the Court will provide only very general prophylactic guidance regarding the proper scope of argument. In the first trial, AmGuard did not object to any arguments; it also did not move for a mistrial.[14] AmGuard now prospectively challenges the Estate's expected arguments based upon its review of the trial record. Rather than issuing a ruling that overly constrains or micromanages counsel's arguments, the Court will provide both parties reasonable latitude for advocacy in the new trial.

In this case, because there will be a factual issue regarding punitive damages, counsel for the Estate may argue all reasonable conclusions based on the evidence that support that claim. Accordingly, specific arguments that may be considered inflammatory in a compensatory damages only claim may be proper in a punitive damages case. Given the nature of a punitive damages case, the Court will not

---

[13] *See also Deangelis v Harrison*, 628 A.2d 77, 80 (Del. 1993) (summarizing types of improper jury arguments in a civil case to include: (1) factual statements not supported by evidence; (2) comment on the legitimacy of a party's claim or defense; (3) mentioning that a defendant is insured; (4) suggesting to the jurors that they place themselves in the plaintiff's position (the "golden rule" argument); (5) commenting on a witness' credibility based on personal knowledge or evidence not in the record; (6) vouching for a witness's credibility; and (7) making an erroneous statement of law).

[14] As observed in the Court's prior Opinion, AmGuard's trial counsel made an apparent tactical decision to not object to these matters. Permitting opposing counsel to overreach in argument can be a viable trial strategy. In recognizing this, the Court explained the difference between criminal matters, where the Court must sometimes intervene *sua sponte*, and civil cases where there is no such duty.

address the identified arguments granularly. Rather, the Court limits its guidance to simply restating the following jury instruction, which correctly summarizes what a jury may consider if it chooses to award punitive damages:

> [y]ou may award punitive damages to punish a defendant for its outrageous conduct and to deter it, and others like it, from engaging in similar conduct in the future . . . you may consider the nature of the defendant's conduct and the degree to which the conduct was reprehensible . . . [Y]ou may assess an amount of damages that will deter that defendant and others like it from similar conduct in the future.[15]

Given the purpose of punitive damages, the Court will not overly constrain the Estate's argument to prevent counsel from referencing the effect of a punitive damages award on the future conduct of other insures. Furthermore , *to the extent that the evidence* in the second trial supports a reasonable inference that AmGuard acted reprehensibly, counsel may argue all reasonable inferences in support of that.

On balance, counsel shall be mindful of those matters addressed in (1) the Court's prior Opinion and (2) Delaware Rule of Professional Conduct 3.4 (e). With that in mind, the second trial cannot be sanitized to the extent AmGuard requests. Questions, evidence, themes, and approaches may differ from the first trial to the second. As aptly articulated by another judge of this Court when addressing a similar motion *in limine*, counsel shall "comport themselves in a manner consistent with Delaware standards of ethics and professionalism."[16] In the second trial, the Court will resolve any objections if and as they arise, as it was prepared to do in the first.

Accordingly, AmGuard's motion is **Granted, in part**. The Estate shall not advance the inflammatory arguments addressed in the Court's Opinion of March 2,

---

[15] *Powell v. AmGuard Ins. Co.*, K17C-11-003 JJC, J.I., at 12 (Del. Super. Oct. 18, 2019).
[16] *See Ferrari v. Helsman Mgmt. Servs., LLC*, 2020 WL 3429988, at *2 (Del. Super. June 23, 2020) (where the Superior Court cautioned the parties regarding the standards it expected during argument, but denied a similar motion *in limine* as not ripe for determination).

2020. Nor shall the Estate advance arguments substantially like the arguments addressed in that Opinion. Otherwise, AmGuard's motion is **DENIED**, **in part**, without prejudice to its ability to object at trial to matters it believes to be inappropriate.

### Motion to Bar Reference to the Oath or Other Comments Regarding the Credibility of Witnesses

AmGuard also moves to preclude counsel from repeatedly referencing the testimonial oath when he questions witnesses. Furthermore, it seeks to bar him from referencing the witnesses' oaths in closing argument. In the first trial, the Estate referred extensively to the oath in its questions and arguments. AmGuard contends that doing so amounted to vouching.[17] More on point, AmGuard contends that counsel's conduct constituted (and will constitute if repeated) reverse vouching because the technique implied that witnesses testified falsely. In addition, AmGuard argues that D.R.E. 403 separately bars the practice.

In response, the Estate counters that references to the testimonial oath are not improper. According to the Estate, its repeated references to the oath in questioning and in argument fall within the bounds of advocacy.

As the Estate contends, referencing the testimonial oath when questioning a witness is not *per se* impermissible. In fact, counsel deserves latitude in questioning and argument when referring to a key component of witness credibility. On the other hand, context, repetitiveness of reference, voice inflection, and other circumstances, may make it objectionable. In the motion and response, the parties address various nuances that arose in the first trial and those they expect to arise in

---

[17] *See Joseph v. Monroe*, 419 A.2d 927, 930 (Del. 1980) (recognizing that "it is improper for counsel to comment on the credibility of witnesses from personal knowledge or from evidence not in the record.").

the second.  Absent trial context, the Court defers decision regarding the matter. Accordingly, AmGuard's motion to preclude this questioning technique or reference to the testimonial oath in argument is **DENIED** without prejudice to AmGuard's right to object to them at trial.

## Motion to Preclude References to Secrets

AmGuard also moves to preclude the Estate from presenting a theme that AmGuard hid the true reason that it delayed paying Mr. Krieger's benefits.  That reason, the Estate alleged, was Mr. Krieger's employer's report that Mr. Krieger hurt himself when stealing copper at the job site, outside of work hours.  In this regard, AmGuard contends that arguing that it had a "secret" reason to deny Mr. Krieger's claim would cause the same unfair prejudice in the new trial that it alleges occurred in the first.

The Estate opposes the motion.  In summary, the Estate contends that the themes it uses at trial are a matter of advocacy and are permissible provided reasonable inferences from the evidence at trial support them.

At the outset, evidence in the first trial supported an inference that AmGuard withheld benefits, in part, because Mr. Krieger's employer claimed Mr. Krieger hurt himself while stealing copper.  If that were true, Mr. Krieger's injury would have occurred outside the course of his employment.  At the first trial, however, AmGuard conceded that it later concluded the employer had falsified the theft report. Furthermore, the evidence showed that AmGuard did not tell Mr. Krieger that the employer had made this claim.  Finally, the evidence established that AmGuard took no action to investigate the claimed theft for months.  In the meantime, AmGuard continued to withhold benefits.

Here, the evidence presented on this issue at the first trial will likely be presented in the second.  Provided that is the case,  AmGuard's motion *in limine* to

preclude the Estate from arguing that AmGuard withheld benefits based on a "secret" or "secrets" is **DENIED**. Such arguments fall within the bounds of advocacy.

**Motion to Preclude Opinion and Narrative Testimony from Joel Fredericks, Esquire**

Next, AmGuard moves to limit Mr. Frederick's testimony in the second trial based on two contentions: that it included (1) improper expert testimony, and (2) narrative responses. AmGuard cites examples in the record of both while acknowledging that it did not object to them in the first trial. Nevertheless, AmGuard seeks a blanket order *in limine* barring both in the new trial.

In the first trial, Mr. Fredericks testified with narrative responses in some instances. Such responses would have been objectionable and subject to motions to strike. Furthermore, the Court recognizes that while Mr. Fredericks is an experienced workers' compensation attorney that may qualify as an expert witness, the Estate did not identify him as one. Rather, at the first trial, Mr. Fredericks offered testimony as the Estate's primary fact witness. Because he presented Mr. Krieger's claim, he will be afforded reasonable latitude to explain what he did, the documents admitted through his testimony, and matters observed by him during the claims process. On the other hand, he may not offer expert testimony.

Here, the Court declines to delineate prospectively what would be a narrative response. Nor will the Court prophylactically define the line between fact and opinion testimony. It will decide any disputes based upon timely objections and trial context. Accordingly, AmGuard's motion *in limine* to outline the future scope of Mr. Fredericks's testimony is **DENIED** without prejudice to raise appropriate objections at trial.

9

**Motion Regarding *Pressman* and *Histed* Excerpts**

AmGuard renews its claim that the Estate should be barred from admitting into evidence excerpts from two Delaware Supreme Court decisions:  *E.I. DuPont de Nemours & Co. v. Pressman,*[18] and *Histed v. E.I. DuPont de Nemours & Co.*[19] In addition, AmGuard raises a D.R.E. 403 argument regarding the excerpts that it did not explicitly raise before the first trial.

The Court explained its reasons for finding both excerpts to be admissible in the first trial.[20]  As it explained, D.R.E. 202 permits the use of such evidence provided it meets other requirements for admissibility.[21]  While AmGuard correctly emphasizes that D.R.E. 403 necessarily applies when evaluating the propriety of admitting case law into evidence that may involve different facts and claims, the Court examined the relevant similarities between the proffered excerpts and the case at hand.  After doing so, it explained those similarities before finding the excerpts to be relevant and admissible.[22]

As to D.R.E 403, their relevance is not substantially outweighed by any D.R.E. 403 concern.  Moreover, the law of the case doctrine controls this issue as well.  The Court's ruling prior to the first trial is sufficiently broad to resolve the matter.  While AmGuard focused on its relevance objection in the first case without raising D.R.E 403, it should have if it had any such objection.  It follows that the

---

[18] *E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 447 (Del. 1996).

[19] *Histed v. E.I. DuPont de Nemours & Co*., 621 A.2d 340, 342 (Del. 1993).

[20] Pretrial Conference Transcript, at 27:9 to 34:5 (Oct. 1, 2019).

[21] S*ee*  D.R.E. 202 cmt. (providing that the purpose of this rule is "to expand and make easier the introduction of evidence of . . . case law of this State . . .. It is the intention of this rule to encourage the admissibility of evidence of law rather than to discourage it.").; *see also* 21B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, *Federal Practice and Procedure* § 5103.1 (2d ed. Oct. 2020 update) (recognizing that this provision, addressing "judicial notice of law," was excluded from the scope of F.R.E. 201 but that some states cover "judicial notice of law" in a separate rule). Delaware is one of those states.

[22] Pretrial Conference Transcript, at 27:9 to 34:5 (Oct. 1, 2019).

admissibility of these two excerpts has already been implicitly settled.  As a result, AmGuard's motion to bar admission of the two excerpts is **DENIED.**

        **IT IS SO ORDERED**

Very truly yours,

<u>/s/ Jeffrey J Clark</u>
Judge

JJC:klc
*Via File & ServeXpress*