# SUPERIOR COURT
# OF THE
# STATE OF DELAWARE

PAUL R. WALLACE
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0660

Submitted:  June 27, 2024
Decided:  June 28, 2024

David J. Baldwin, Esquire
Peter C. McGivney, Esquire
BERGER MCDERMOTT
1105 N. Market Street, 11th Floor
Wilmington, Delaware 19801

Jeffrey L. Moyer, Esquire
Alexandra M. Ewing, Esquire
RICHARDS, LAYTON & FINGER
One Rodney Square
Wilmington, Delaware 19801

Christine S. Haskett, Esquire (*argued*)
David A. Luttinger, Jr., Esquire
Hakeem S. Rizk, Esquire
Billie Mandelbaum, Esquire
COVINGTON & BURLING
415 Mission Street, Suite 5400
San Francisco, California 94105

Alex M. Gonzalez, Esquire
Israel J. Encinosa, Esquire
Matthew D. Grosack, Esquire
Manuel A. Miranda, Esquire
Chael J. Clark, Esquire
Anthony J. Sirven, Esquire
HOLLAND & KNIGHT
701 Brickell Avenue, Suite 3300
Miami, Florida 33131

RE:  *Hartree Natural Gas Storage, LLC v. Euclid Transactional, LLC, et. al*
    C.A. No. N22C-05-081 PRW CCLD
    Parties' Pending Discovery and Related Motions

Dear Counsel:

   This Letter Decision and Order resolves the parties' five motions that were heard yesterday.[1]  For the reasons set out below:

---

[1]   The Court delivers this decision with the knowledge that the parties are fully versed in factual and procedural background of this case, as well as the arguments each makes on the instant dueling motions.  It, therefore, will only touch on the specifics of those as needed here.

Hartree's Motion to Compel Defendant Liberty's Compliance with this Court's Prior Orders and Responses to Plaintiff's Discovery Requests (D.I. 232) is **GRANTED in part and DENIED in part**;

Liberty's Motion to Bifurcate and Stay All Discovery of Hartree's Bad-Faith Claim or, in the Alternative, for a Protective Order Against "Tackett" Discovery (D.I. 233) is **DENIED**;

Liberty's Motion for Leave to Serve Requests for Production (D.I. 234) is **GRANTED**;

Liberty's Motion to Compel Plaintiff's Responses to Defendant's Second Request for Production (D.I. 235) is **DENIED**; and,

Liberty's Motion to Compel Plaintiff's Responses to Defendant's Discovery Requests (D.I. 236) is **DENIED**.

## I. BRIEF OVERVIEW

### A. THE PARTIES

Plaintiff Hartree Natural Gas Storage, LLC is a Delaware limited liability company that operates out of Texas and is the named insured on the insurance policies at issue in this action. [2]

Defendant Liberty Surplus Insurance Corporation is a New Hampshire corporation that operates out of Massachusetts.[3] Defendant AIG Specialty Insurance Company (collectively with Liberty, the "Insurers") is an Illinois corporation with its principal place of business in New York.[4]

---

[2] Second Amended Complaint ("Compl.") ¶ 8 (D.I. 212).

[3] *Id.* ¶ 9. Liberty is the first layer excess insurer.

[4] Compl. ¶ 10. AIG is the second-layer excess insurer. Although both Liberty and AIG are the Insurers in this action, these motions only involve Liberty, not AIG.

Former defendants include Euclid Transactional, LLC,[5] North American Capacity Insurance Company, Aspen Specialty Insurance Company, General Security Indemnity Company of Arizona, and Steadfast Insurance Company.[6] In October 2023, the Court dismissed each of these defendants from this action.[7]

## B. FACTUAL BACKGROUND

In June 2021, Hartree entered into the Membership Interest Purchase Agreement ("MIPA") with PAA Natural Gas Storage, L.P., in part for the acquisition of the Pine Prairie Energy Center.[8] In connection with the MIPA, Hartree purchased buyer-side representations and warranties insurance policies for the period of June 2021 to August 2024 from the Insurers.[9] One such representation and warranty regarded the amount of Base Gas at Pine Prairie at the time of Hartree's acquisition of the facility.[10]

After Hartree took control of Pine Prairie, it became aware of a divergence between NGI and Hysys measurements of Base Gas at the facility.[11] Hartree notified the Insurers, seeking confirmation that its losses would be covered.[12] The Insurers denied coverage.[13]

---

[5] Euclid Transactional is sometimes referred to in this litigation as the "Underwriting Representative," and is referred to as such here.

[6] Compl. ¶ 1. These now-dismissed defendants were the primary insurers.

[7] D.I. 174.

[8] *Id.* ¶ 1; *see* Compl., Ex. A ("Hartree Policy").

[9] *Id.* ¶ 1.

[10] *Id.*

[11] *Id.* ¶ 3.

[12] *Id.* ¶ 5.

[13] *Id.*

## C. PROCEDURAL BACKGROUND

Hartree initiated this lawsuit in May 2022, seeking declaratory judgment against Euclid and the Insurers, and breach of contract against all Insurers.[14] That complaint was amended in 2023.[15] This past March, Hartree was granted leave to file a second amended complaint to add a bad-faith claim against Liberty.[16] Shortly thereafter, the case was reassigned from a now-retired colleague's docket to the undersigned.

Hartree's complaint now brings three counts: declaratory judgment against Liberty and AIG (Count I);[17] breach of contract against Liberty and AIG (Count II);[18] and, bad faith and/or breach of the implied covenant of good faith and fair dealing against Liberty (Count III).[19] The parties are currently engaged in discovery.

## D. THE COURT'S RELEVANT PRIOR RULINGS

During the course of this litigation, the Court—through the predecessor judge—made two important rulings: the "November 2023 Ruling"[20] and the "March 2024 Ruling."[21] A quick discussion of both helps contextualize and resolve the motions now before the Court.

---

[14]  D.I. 1. Hartree also filed suit against the Seller. *See Hartree Natural Gas v PAA Natural Gas Storage*, N22C-07-073 PRW CCLD.  That lawsuit will be referred to as the "Seller Litigation" here.

[15]  D.I. 114.

[16]  D.I. 210; *see generally* Compl.

[17]  Compl. ¶¶ 72-78.

[18]  *Id*. ¶¶ 79-85.

[19]  *Id*. ¶¶ 86-94.

[20]  D.I. 190 ("Nov. 2023 Ruling Tr.").

[21]  D.I. 220 ("March 2024 Ruling Tr.").

### 1. The November 2023 Ruling

The November 2023 Ruling resolved motions to compel filed by both Hartree and Liberty.[22] Relevant here, Hartree had moved to compel the Insurers to produce documents regarding the investigation and assessment of Hartree's claim for insurance coverage.[23]

Via transcript ruling, the predecessor judge granted Hartree's motion in part, and denied it in part.[24] As to Hartree's motion to compel claim investigation documents, the Court "grant[ed] the motion to compel with regard to information in the investigation and claim's adjustment files and processes."[25]

The Court clarified that, although extrinsic evidence isn't admissible to demonstrate anything with regard to an unambiguous policy term, the "factual" issue of "whether or not commercially reasonable steps were taken to mitigate losses" is certainly discoverable.[26] The Judge then explained that,

> to the extent there is information in the claim's files with regard to whether or not commercially reasonable steps were taken to mitigate losses, that is going to be discoverable. And that will include non-privileged communications among Liberty or AIG employees as to whether or not the claim should or should not be covered.[27]

She continued,

> when I say non-privileged . . . you can't simply ask a lawyer to do the

---

[22] *See* D.I. 172 (Hartree's Mot. to Compel AIG); D.I. 173 (Hartree's Mot. to Compel Liberty); D.I. 178 (Liberty's Mot. to Compel Hartree).

[23] *See* D.I. 173.

[24] Nov. 2023 Ruling Tr. at 82.

[25] *Id*. at 78.

[26] *Id*. at 77-78.

[27] *Id*. at 78.

job of a claim's adjustor or something similar and then claim that the information is privileged. Privilege, as we all know, has to do with legal analysis and giving legal advice. It does not have to do with work that is normally done by claim's adjustors or similar people.[28]

## 2. The March 2024 Ruling

The March 2024 Ruling addressed Hartree's motion for leave to file its second amended complaint and Liberty's motion to sever and stay any bad-faith claim.[29] After hearing argument on both motions, the Court granted Hartree's motion for leave to amend and denied Liberty's motion to sever or stay.[30]

In so ruling, the Judge observed that "[t]he only possible reason to sever these trials is prejudice."[31] And when denying the motion to sever, she held:

> I am denying the motion for severability for a couple of reasons. One is by the plain language of Rule 42(b). If we were to have separate trials, it would be duplicative witnesses, duplicative documents, duplicative facts. The only possible reason to sever these trials is prejudice. And there's no question that bringing these claims together has prejudice. The question is, is it sufficient prejudice to sever.[32]

The Court acknowledged that "[a]nytime you bring two claims together . . . there are all kinds of reasons in which prejudice can arise. The question is, is it undue prejudice that supersedes the Rule 42(b) requirement that cases be tried together, if

---

[28]  *Id.*

[29]  *See* D.I. 197 (Hartree's Motion for Leave to File Second Amended Complaint); D.I. 200 (Liberty's Motion to Sever and Stay Bad-Faith Litigation).

[30]  March 2024 Ruling Tr. at 87.

[31]  *Id.* at 85.

[32]  *Id.*

at all possible, to prevent duplication and inefficiencies."[33] The Judge then noted that the CCLD has consistently tried insurer coverage and bad-faith cases together:

> Counsel have confirmed my impression that there has not been severance of these bad faith claims, which come up on a regular basis in coverage cases. The coverage cases are a large portion of the cases that are in CCLD. And my personal experience is, and I've had—tried several of these cases and of course heard many, many more up to and through the summary judgment context, there is no severance that has been granted, and that the cases go through, and it does complicate evidentiary issues, no question about that, there is always going to be some prejudice, but it is outweighed by the need for judicial economy and for the efficiencies of trying all the issues in one case together at the same time.[34]

Finally, the Judge recognized that "even though there are a couple of cases that do say that prejudice requires severance, none of those cases are recent, and none of them are involved in the CCLD context."[35]

### E. THE PRESENT MOTIONS

There are five motions before the Court. Liberty brings four out of those five. First, Liberty moves to bifurcate or stay discovery on Hartree's bad-faith claim, or in the alternative, for a protective order to avoid "Tackett" discovery.[36] Second, Liberty moves for leave to serve additional Requests for Production on Hartree after

---

[33] March 2024 Ruling Tr. at 85-86.

[34] March 2024 Ruling Tr. at 86-87.

[35] *Id*. at 86.

[36] *See generally* Defendant Liberty Surplus Insurance Corp.'s Motion to Bifurcate and Stay All Discovery of Plaintiff's Bad-Faith Claim or, in the Alternative, for a Protective Order Against "Tackett" Discovery ("Liberty's Mot. to Bifurcate") (D.I. 233).

Hartree's second amended complaint added a bad-faith claim against it.[37] Third, Liberty moves to compel Hartree to produce all documents and communications related to the 2024 Williams Sale.[38] Fourth, Liberty moves to compel Hartree to produce unredacted documents and communications previously redacted or withheld, and to provide Liberty with an itemized privilege log that includes post-filing documents.[39]

Hartree also brings a motion to compel.[40] In that motion, Hartree moves to compel Liberty to comply with the Court's November 2023 and March 2024 Rulings, to produce documents and communications between Liberty's counsel and PAA or Plains, and for fees and costs incurred in bringing the motion.[41]

## II. APPLICABLE LEGAL STANDARDS

This Court's Civil Rule 26 governs the scope of discovery, and reads:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not grounds

---

[37] *See generally* Defendant Liberty Surplus Insurance Corp.'s Motion for Leave to Serve Requests for Production ("Liberty's Mot. for Leave") (D.I. 234).

[38] *See generally* Defendant Liberty Surplus Insurance Corp.'s Motion to Compel Plaintiff's Responses to Defendant's Second Request for Production ("Liberty's First Mot. to Compel") (D.I. 235).

[39] *See generally* Defendant Liberty Surplus Insurance Corp.'s Motion to Compel Plaintiff's Responses to Defendant's Discovery Requests ("Liberty's Second Mot. to Compel") (D.I. 236).

[40] *See generally* Plaintiff's Motion to Compel Defendant Liberty Surplus Insurance Corporation's Compliance with this Court's Prior Orders and Responses to Plaintiff's Discovery Requests ("Hartree's Mot. to Compel") (D.I. 232).

[41] *See generally* Hartree's Mot. to Compel.

for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.[42]

"The purpose of discovery is to advance issue formulation, to assist in fact revelation, and to reduce the element of surprise at trial."[43] And the scope of Rule 26 discovery "is broad and far-reaching."[44] Discovery, though, can be limited where:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the discovery sought is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[45]

## III. DISCUSSION

### A. HARTREE'S MOTION TO COMPEL

Hartree moves to compel Liberty to: (1) comply with this Court's November 2023 Ruling and March 2024 Ruling; (2) produce all communications it or its counsel has had with PAA or Plains regarding this lawsuit and the Seller Litigation;

---

[42] Del. Super. Ct. Civ. R. 26(b)(1).

[43] *Levy v. Stern*, 1996 WL 742818, at *2 (Del. Dec. 20, 1996) (citation omitted).

[44] *Woodstock v. Wolf Creek Surgeons, P.A.*, 2017 WL 3727019, at *6 (Del. Super. Ct. Aug. 30, 2017) (citing *Levy*, 1996 WL 742818, at *2 ("pretrial discovery rules are to be afforded broad and liberal treatment")).

[45] Del. Super. Ct. Civ. R. 26(b).

and, (3) award Hartree its legal fees incurred in bringing this motion.[46]

"In evaluating a motion to compel discovery, the Court determines whether the discovery sought is reasonably calculated to lead to admissible, non-privileged evidence."[47] "The scope of permissible discovery is broad, therefore objections to discovery requests, in general, will not be allowed unless there have been clear abuses of the process which would result in great and needless expense and time consumption. The burden is on the objecting party to show why the requested information is improperly requested."[48]

### 1. Liberty's Compliance with the Court's November and March Rulings

Hartree asks the Court to compel Liberty to comply with the Court's November 2023 Ruling and March 2024 Ruling.[49] Hartree says that the November 2023 Ruling establishes that claim investigations materials aren't privileged and are discoverable.[50]

The Court's November 2023 Ruling is clear: Liberty must produce any non-privileged documents or communications with regard to the claim's adjustment files and processes.[51] That includes documents or communications by lawyers in the role of a claim's adjustor, investigator, or something similar.[52]

---

[46] *See generally* Hartree's Mot. to Compel.

[47] *Hunter v. Bogia*, 2015 WL 5050648, at *2 (Del. Super. Ct. July 29, 2015) (citing Del. Super. Ct. Civ. R. 26(b)(1) and *Alberta Sec. Comm'n v. Ryckman*, 2015 WL 2265473, at *9 (Del. Super. Ct. May 5, 2015)).

[48] *Prod. Res. Grp., L.L.C. v. NCT Grp., Inc.*, 863 A.2d 772, 802 (Del. Ch. 2004) (citations and internal quotations omitted).

[49] Hartree's Mot. to Compel at 6-9.

[50] *Id*.

[51] Nov. 2023 Ruling Tr. at 78.

[52] *See id*.

Two clarifications are necessary here. One, the Court's ruling *was not* that only materials related to whether commercially reasonable steps were taken to mitigate losses were discoverable—Liberty was *incorrect* in gleaning that limitation. Two, Hartree is *incorrect* that the November 2023 Ruling ruled that *all* claim investigations materials unprivileged. The November 2023 Ruling merely differentiated between an attorney acting as a claims investigator and an attorney acting as legal counsel.[53] So, to the extent that Liberty engaged with counsel as a *claims investigator*, it must produce those documents and communications. To the extent that Liberty engaged with counsel for *legal advice*, those documents and communications are still privileged.

The Court's March 2024 Ruling is just as clear: Liberty's motion to sever or stay any bad-faith litigation was denied.[54] Liberty's attempt to rehash those same arguments in opposition to the present motion to compel is as unpersuasive now as it was then.

Accordingly, insofar as Liberty was utilizing counsel as a claims adjustor, claims investigator, or the like, and to the extent that it hasn't produced subject documents or communications, Hartree's motion to compel Liberty to comply with the November 2023 Ruling and the March 2024 Ruling is **GRANTED**.

---

[53] *See id*.:

> When I say non-privileged, as was stated, you can't simply ask a lawyer to do the job of a claim's adjustor or something similar and then claim that the information is privileged. Privilege, as we all know, has to do with legal analysis and giving legal advice. It does not have to do with work that is normally done by claim's adjustors or similar people.

[54] March 2024 Ruling Tr. at 87.

## 2. Documents and Communications between Liberty's Counsel and PAA or Plains

Hartree also asks for Liberty to produce its counsel's communications with PAA or Plains that are responsive to Hartree's discovery requests.[55] Hartree says that these communications are in Liberty's "possession, custody, or control," and that they are relevant.[56]

Hartree's motion references Requests Nos. 1, 6, 16, 17, and 20. Those are:

No. 1:  Produce any and all Documents relating to Hartree.

No. 6:  Produce any and all Documents that relate to the Claim.

No. 16:  Produce any and all Documents that relate to the allegations in the Complaint.

No. 17:  Produce any and all Documents relating to the bases for any affirmative defense which [Liberty] intends to assert in this action.

No. 20:  Produce all Documents that refer, relate to, or concern any communications between you and any non-parties (except your legal counsel) concerning the allegations contained in the Complaint.[57]

Hartree is entitled to the documents and communications it seeks. Liberty's communications with Plains relating to Hartree, the insurance claim, the allegations in the complaint, and any affirmative defenses are relevant and discoverable under

---

[55]  Hartree's Mot. to Compel at 9-11.

[56]  *Id.*

[57]  Hartree's Mot. to Compel at 5; Hartree's Mot. to Compel, Ex. F (Meet and Confer Emails between Hartree and Liberty) at 7-8.

Rule 26's broad standard.[58] More specifically, Liberty's communications with Hartree's adversary in the Seller Litigation are relevant to Hartree's bad-faith claim against Liberty. To the extent those communications aren't relaying privileged legal advice, they are thus discoverable.

Liberty says that the communications Hartree seeks are not in Liberty's possession, custody, or control.[59] In particular, Liberty says that the communications were between the Underwriting Representative and Plains, not Liberty and Plains.[60] Liberty is correct that only its own communications with PAA or Plains are discoverable, not those between the Underwriting Representative and PAA or Plains.[61] Still, Liberty must produce any non-privileged documents or communications responsive to Hartree's request, if there are any.

Accordingly, to the extent that there are non-privileged documents or communications between Liberty and Plains, Hartree's motion to compel those documents and communications is **GRANTED**.

### 3. Hartree's Request for Fees

Last, Hartree asks for fees incurred with bringing this motion to compel.[62] Hartree says that Liberty is forcing Hartree to litigate issues for the second time, so it should be awarded its legal fees as a result.[63]

---

[58] *See* Del. Super. Ct. Civ. R. 26(a); *see also, e.g.*, *Levy*, 1996 WL 742818, at *2; *Woodstock*, 2017 WL 3727019, at *6; *Hunter*, 2015 WL 5050648, at *4.

[59] Defendant Liberty Surplus Insurance Corp.'s Opposition to Plaintiff's Motion to Compel ("Liberty's Opp. to Hartree's Mot. to Compel") at 9-10 (D.I. 242).

[60] *Id.*

[61] *See* Del. Super. Ct. Civ. R. 34(a).

[62] Hartree's Mot. to Compel at 2, 9, 12.

[63] *Id.* at 9.

Rule 37 gives the Court broad discretion to impose sanctions and shift costs for discovery violations.[64] "The Court[, however,] must exercise care when imposing any sanction, and such sanction must always be 'tailored to [a] specific discovery violation and its prompt cure; that includes consideration of the intent of the party opposing discovery, and of whether and to what extent the party seeking discovery has been prejudiced . . . but should always be viewed in light of [the] proper functions that sanctions are intended to serve.'"[65]

"Rule 37(a)(4)(A) instructs a judge granting a motion to compel to 'require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the Court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.'"[66]

Hartree isn't entitled to fees under Rule 37 here. Hartree correctly points out that these issues have been litigated already, and the Court did make rulings on them previously. But Hartree also amended its complaint to add a bad-faith claim just three months ago, after discovery deadlines had passed. Thus, while re-litigating these issues is certainly not the best use of the Court's time or resources, the circumstances of this case at least provide some justification for doing so here. As such, Hartree's ask for attorney's fees and costs in this instance is **DENIED**.

---

[64] *Dynacorp, et al. v. Underwriters at Lloyd's, London, et al.*, 2014 WL 4656393, at *3 (Del. Super. Ct. Sept. 18, 2014) (citations omitted).

[65] *Keith v. Lamontagne*, 2021 WL 4344158, at *2 (Del. Super. Ct. Sept. 20, 2021) (certain alterations in original) (quoting *In re Rinehardt*, 575 A.2d 1079 (Del. 1990)).

[66] *Serviz, Inc. v. ServiceMaster Co., LLC*, 2021 WL 5768655, at *6 n.59 (Del. Super. Ct. Dec. 6, 2021) (emphasis omitted) (quoting Del. Super. Ct. Civ. R. 37(a)(4)(A)).

## B.  LIBERTY'S MOTION TO BIFURCATE AND STAY DISCOVERY

Liberty moves to bifurcate and stay all discovery of Hartree's bad-faith claim or, in the alternative, for a protective order against so-called "Tackett" discovery.[67] Liberty says that Hartree has changed course since representing to the Court that there would be no additional discovery, which led to the Court's March 2024 Ruling.[68]  Specifically, Liberty says that Hartree has asked for new discovery in the form of documents and communications involving Liberty's counsel and internal analysis of the claim.[69]

Here, the Court already decided the legal issue of whether Hartree's bad-faith claim should be severed or stayed in its March 2024 Ruling.[70]  The law of the case doctrine is a "judicially-created doctrine that prevents parties from relitigating issues[s] that previously have been decided."[71]  "Once a matter has been addressed in a procedurally proper way by a court, it is generally held to be the law of that case and will not be disturbed by that court unless a compelling reason to do so appears."[72] The doctrine is not an absolute restriction; issues that are "clearly wrong, produce[] an injustice or should be revisited because of changed circumstances" might be

---

[67]  *See generally* Liberty's Mot. to Bifurcate.

[68]  *Id*. at 2-3 (citing March 2024 Ruling Tr. at 63).

[69]  *Id*. at 6-11.

[70]  March 2024 Ruling Tr. at 87 (denying Liberty's motion to sever or stay).

[71]  *CRE Niagara Holdings, LLC v. Resorts Grp., Inc.*, 2023 WL 2625838, at *7 (Del. Super. Ct. Mar. 24, 2023) (quoting *Zurich Am. Ins. Co. v. Syngenta Crop Protection LLC*, 2022 WL 4091260, at *3 (Del. Super. Ct. Aug. 24, 2022)); *see also State v. Wright*, 131 A.3d 310, 321 (Del. 2016) ("The law of the case doctrine is a self-imposed restriction that prohibits courts from revisiting issues previously decided, with the intent to promote efficiency, finality, stability and respect for the judicial system." (internal quotations and citations omitted)).

[72]  *Zirn v. VLI Corp.*, 1994 WL 548938, at *2 (Del. Ch. Sept. 23, 1994).

reexamined.[73]

The March 2024 Ruling denying Liberty's motion to stay or sever any bad-faith claim is now the law of this case. So, Liberty's new motion to bifurcate or stay can only proceed if there's a change in fact or circumstance, or if the prior decision produced an injustice. According to Liberty, the applicable "change in fact" is Hartree's requests for documents and communications involving Liberty's counsel and internal analysis of the claim.[74] Liberty also says that Hartree may depose Liberty's attorneys, and that it seeks attorney-related communications and work product.[75]

But Hartree's discovery requests aren't new. In its motion to compel, Hartree asks that (1) Liberty produce all of its claim investigation materials; and (2) Liberty produce communications it or its counsel had with PAA or Plains.[76] Those documents and communications fall in the same categories as those Hartree sought prior to amending its complaint.[77] Further, Hartree says that it's not planning to

---

[73] *State v. Wright*, 131 A.3d at 321 (internal citations omitted).

[74] Liberty's Mot. to Bifurcate at 6-7.

[75] *Id.*

[76] *See* Hartree's Mot. to Compel.

[77] *See id.*, Ex. A (Hartree's First Set of RFPs).

Hartree's specific request for communications with PAA or Plains is not a new request, but a confirmation of the requests it had already made. *See generally* Hartree's Mot. to Compel, Ex. A (Hartree's First Set of RFPs); Hartree's Mot. to Compel, Ex. F (Asking Liberty to confirm that it has produced all communications responsive to its requests, *including* communications with PAA or Plains). What's more, identifying PAA or Plains in the discovery dispute isn't a readily apparent "change in fact" necessary to revisit the Court's prior decision. In any event, the production of now-relevant communications between Liberty and PAA or Plains doesn't prejudice Liberty in a way that supersedes Rule 42's requirement to try cases together to avoid duplication and inefficiency. *See* Del. Super. Ct. Civ. R. 42(a)-(b).

depose any additional Liberty witnesses.[78]  Liberty fails to show any new facts that would require the Court to revisit the decided issue of bifurcating or staying Hartree's bad-faith claim.

Even if Hartree's discovery requests did constitute a change in fact or circumstance, this Court's preference for trying cases together still applies.  Civil Rule 42(b) provides that for "convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, [the Court] may order a separate trial of any claim . . . or of any separate issue."[79]  Otherwise, when claims involve a common issue of law or fact, they should presumptively be tried together.[80]  When addressing bifurcation, the our Supreme Court has examined the issues of convenience, potential prejudice, and judicial economy.[81]

As the predecessor judge explained her March 2024 Ruling, any prejudice that might exist here must supersede Rule 42's requirement to try cases together "to prevent duplication and inefficiencies."[82]  The Court noted that the CCLD consistently tries insurance coverage claims and insurer bad-faith claims together, and that Liberty's cited-to cases are inapplicable.[83]  That same determination still holds now, just three months later.  Civil Rule 42 still favors trying these claims

---

[78]  Plaintiff's Opposition To Defendant Liberty Surplus Insurance Corporation's Motion To Bifurcate And Stay All Discovery Regarding Plaintiff's Bad Faith Claim Or, In The Alternative, For A Protective Order Against "Tackett" Discovery ("Hartree's Opp. to Liberty's Mot. to Bifurcate") at 7-8 (D.I. 238).

[79]  Del. Super. Ct. Civ. R. 42(b).

[80]  Del. Super. Ct. Civ. R. 42(a).

[81]  *See, e.g.*, *Beebe Medical Center, Inc., v. Bailey*, 913 A.2d 543 (Del. 2006).

[82]  March 2024 Ruling Tr. at 86.

[83]  *Id*. at 86-87.

together.

In the alternative, Liberty moves for a protective order against "*Tackett*" discovery.[84]  Under Civil Rule 26(c), a party moving for a protective order bears the burden to show "good cause" for a protective order to prevent "annoyance, embarrassment, oppression, or undue burden or expense[.]"[85] Here, Liberty has made no such showing. Hartree's discovery requests will not annoy, embarrass, oppress, or cause undue burden or expense for Liberty.  They will merely delve into the claims-investigation process; a subject of this dispute.

Accordingly, Liberty's motion to bifurcate or stay, or in the alternative, for a protective order against "Tackett" discovery is **DENIED**.

### C. LIBERTY'S MOTION FOR LEAVE TO SERVE CERTAIN RFPS

Liberty asks for leave of court so that it can serve additional requests for production on Hartree.[86] Liberty says that it needs to do so in order to determine the "veracity" of Hartree's bad-faith claim, and to avoid prejudice.[87]

In the pleadings context, a motion for leave is "within the sound discretion of the court"[88] and leave "shall be freely given when justice so requires."[89]  In turn,  the Court "exercise[s] its discretion in favor of granting leave" to amend a pleading.[90]

---

[84]  Liberty's Mot. to Bifurcate at 11-12.

[85]  Del Super Ct. Civ. R. 26(c); *see Lisowski v. Bayhealth Med. Ctr., Inc.*, 2017 WL 1423869, at *2 (Del. Super. Ct. Apr. 20, 2017).

[86]  *See generally* Liberty's Mot. for Leave.

[87]  *Id*. at 4-5.

[88]  *E.I. du Pont de Nemours & Co. v. Allstate Ins. Co.*, 2008 WL 555919, at *1 (Del. Super. Ct. Feb. 29, 2008) (citations omitted).

[89]  *Id*. (quoting Del Super Ct. Civ. R. 15(a)).

[90]  *Id*. (citing *Mullen v. Alarmguard of Delmarva, Inc.*, 625 A.2d 258, 263 (Del. 1993)).

Here, Liberty moves for leave under Civil Rule 26(b)(1), which governs discovery.[91] Although that rule doesn't directly address leave of court to obtain additional discovery, it does provide that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party."[92]

Liberty is entitled to leave to serve additional discovery. Just recently, Hartree amended its complaint to add a bad-faith claim against Liberty.[93] That amendment came many months after the deadline to serve requests for production expired.[94] In the interests of justice and fairness, Liberty should be allowed to reopen the requests for production window for the specific purpose of inquiring into Hartree's bad-faith claim against it.

In opposition, Hartree says that Liberty seeks only production of privileged material, including communications between Hartree and counsel about its decision to amend the complaint.[95] Hartree is correct that the standard discover rules govern any of Liberty's additional requests. As such, Liberty may not inquire into privileged documents or communications. If it does so, Hartree is free to object. But for now, the interests of justice and fairness warrant allowing Liberty to adequately

---

[91] Liberty's Mot. for Leave at 4-5 (citing Del. Super. Ct. Civ. R. 26(b)(1)).

[92] Del. Super. Ct. Civ. R. 26(b)(1).

[93] *See generally* Compl.

[94] *See* D.I. 110 (Case Management Order) (identifying July 13, 2023 as the deadline for serving RFPs).

[95] Plaintiff's Opposition To Defendant Liberty Surplus Insurance Corporation's Motion For Leave To Serve Requests For Production ("Hartree's Opp. to Liberty's Mot. for Leave") at (D.I. 239).

respond to Hartree's late-stage amended complaint; Liberty's motion for leave to serve requests for production is **GRANTED**.

### D. LIBERTY'S FIRST MOTION TO COMPEL

Liberty moves to compel Hartree's responses to Liberty's second set of requests for production.[96] Relevant here, those requests ask for documents and communications relating to the 2024 Williams Sale of the Pine Prairie and Mississippi facilities.[97] The same standards governing motions to compel previously discussed apply here.[98]

Hartree responded to Liberty's Second Set of Requests for Production Nos. 1-8 and 14, but did not produce documents in response to Request Nos. 9-13.[99] Requests Nos. 9-13 are as follows:

No. 9.  All Documents and Communications relating to the value attributed by either Hartree or Williams to the Pine Prairie Facility and SG Resources Facility, separately, as part of the Sale;

No. 10.  All Communications, presentations, memoranda, and analyses prepared in connection with the Sale of the Facilities and related to the value of the Facilities, the expected sales price, and price negotiations;

No. 11.  All financial projections, forecasts, and models prepared by Hartree or Williams in connection with the Sale;

No. 12.  All Documents related to or on which [Hartree] relied to

---

[96]  *See generally* Liberty's First Mot. to Compel.

[97]  Liberty's First Mot. to Compel, Ex. 2 ("Liberty's Second Set of RFPs") at 9-10.

[98]  *See* Part IV(A), *supra.*

[99]  *See* Liberty's First Mot. to Compel, Ex. 3 ("Hartree's Responses to Liberty's Second Set of RFPs") at 11-14.

> perform [Hartree's] assessment and analysis of the valuation and purchase price received or to be received for the Facilities as part of the Sale; and,
>
> No. 13.  All Documents related to or on which [Hartree] relied to perform [Hartree's] assessment and analysis of the valuation and purchase price received or to be received for the base gas at the Facilities as part of the Sale.[100]

Requests Nos. 9 and 13 ask for additional documents and communications between Hartree and Williams.  Hartree initially objected to both by stating that "there are no documents responsive to this Request."[101]  Now, Hartree represents that those documents and communications simply don't exist.[102]  Thus, Hartree objects on the basis that those communications are not in Hartree's "possession, custody or control."[103]  Based on that representation, the Court cannot grant Liberty's request for production of additional communications between Hartree and Williams asked for in Requests Nos. 9 and 13.[104]

Requests Nos. 10-12 are tantamount to Liberty asking for all Williams Sale documents.  Liberty says that these documents and communications "go to the heart of this dispute."[105]  Hartree objects to these requests as irrelevant.[106]  According to

---

[100]  Liberty's Second Set of RFPs at 9-10.

[101]  Hartree's Responses to Liberty's Second Set of RFPs at 11-14.

[102]  Plaintiff's Opposition To Defendant Liberty Surplus Insurance Corporation's Motion For Leave To Serve Requests For Production ("Hartree's Opp. to Liberty's First Mot. to Compel") at 6-7 (D.I. 240).

[103]  Hartree's Opp. to Pl.'s First Mot. to Compel at 6-7.

[104]  *See Kaye v. Pantone, Inc.*, 1983 WL 18012, at *2 (Del. Ch. Mar. 28, 1983) ("a document . . . is not in the possession, custody or control of a party if it does not exist.").

[105]  Liberty's First Mot. to Compel at 5.

[106]  Hartree's Opp. to Liberty's First Mot. to Compel at 8-10.

Hartree, it has already produced to Liberty: the transaction document detailing the terms and conditions of the sale; documents and communications exchanged between Hartree and Williams relating to this litigation; and, all technical reports and materials about the facility.[107] Hartree has also identified all employees that will be transferred to Williams.[108]

At this point, it appears that Hartree has sufficiently responded to Liberty's requests. This dispute is about misrepresentations in the 2021 MIPA, not the 2024 Williams Sale. The "heart of the dispute," then, is whether coverage is owed under the MIPA based on the MIPA representations and warranties insured under the Hartree Policy. So very few Williams Sale documents would likely of any moment. From the representations made in the papers and at hearing of the motion, Hartree has already produced sufficient documents regarding the Williams Sale that relate to that central issue. Liberty's additional discovery requests are overbroad, outside the scope of this case, and improper.[109]

Liberty's motion to compel Hartree's responses to Liberty's Second Request for Production is **DENIED**.

---

[107] *Id.*

[108] *Id.*

[109] *See* Del. Super. Ct. Civ. R. 26(b) (listing instances when discovery can be limited). In support of its motion, Liberty points to the Court's *in limine* ruling in the Seller Litigation, when the Court denied Hartree's motion to preclude any evidence about the Williams Sale at trial. Liberty's Mot. to Compel at 5. Liberty says that since the admissibility threshold is higher than discoverability, any Williams Sale documents should be produced for the same reasons that guided the Court there. *Id.* But Liberty ignores a salient difference between the two suits: the Seller Litigation was a fraud action; this is an insurance coverage case. Fraud has a reliance element, and thus, a requisite state of mind that includes future plans for the facility. There's no reliance element for a coverage dispute. Here the determination is simply whether coverage is owed or not under the policy. So, the Court's *in limine* ruling in the Seller Litigation is inapplicable and unhelpful for Liberty.

### E. LIBERTY'S SECOND MOTION TO COMPEL

Liberty's second motion to compel asks the Court to compel Hartree to: (1) produce unredacted documents and communications previously redacted; (2) produce certain withheld documents and communications; and (3) provide Liberty with an updated itemized privilege log.[110]

#### 1. Request for Redacted Documents and Communications

Liberty asks for the 1,500 documents that Hartree previously redacted to be produced in an unredacted form.[111]  In response, Hartree says that it has been and currently is in the process of reviewing previously redacted documents.[112]  Hartree has produced certain of those documents post-review and assured the Court that, following its review, Hartree has and will remove redactions as appropriate and will serve an amended privilege log.[113] Liberty is simply unconvinced and pointed to certain remaining redactions to suggest the excised material can't be privileged.

Based on Hartree's representations, the Court finds Liberty's request for unredacted documents to be both premature and moot. If Hartree fails to remove redactions, or if Liberty disagrees with Hartree's production, it is free to seek more specific relief at the appropriate time.  But mere suspicion is not enough for the blanket relief it now seeks.

Liberty's motion to compel production of wholly unredacted documents is **DENIED**.

---

[110] *See generally* Liberty's Second Mot. to Compel.

[111] Liberty's Second Mot. to Compel at 11-12.

[112] Plaintiff's Opposition To Defendant Liberty Surplus Insurance Corporation's Motion To Compel Plaintiff's Responses To Defendant's Discovery Requests (Hartree's Opp. to Liberty's Second Mot. to Compel") at 11 (D.I. 241).

[113] Hartree's Opp. to Liberty's Second Mot. to Compel at 11.

## 2. Request for Withheld Documents and Communications

Liberty also moves to compel all claim-related documents and communications.[114] The documents in question are listed in Hartree's privilege log, which is attached as an exhibit to Liberty's motion.[115] The privilege log identifies the documents being withheld and identifies the reasoning for such, citing either attorney-client privilege,[116] common interest privilege,[117] or the work product doctrine.[118]

---

[114] Liberty's Second Mot. to Compel at 4-11.

[115] *See generally id.*, Ex. 2 ("Hartree Privilege Log").

[116] *See* Hartree Privilege Log. The attorney-client privilege "generally protects the communications between a client and an attorney acting in his professional capacity . . . ." *Alaska Elec. Pension Fund v. Brown*, 988 A.2d 412, 419 (Del. 2010) (citing *Moyer v. Moyer*, 602 A.2d 68, 72 (Del. 1992)). The privilege is "intended to encourage full and frank communication between clients and their attorneys" and its common-law roots are now codified in Rule 502 of the Delaware Rules of Evidence. *Zirn*, 621 A.2d at 781; D.R.E. 502. The attorney-client privilege applies to confidential communications between an attorney and her client "made for the purpose of facilitating the rendition of legal professional legal services. D.R.E. 502(b).

[117] *See* Hartree Privilege Log. The common interest privilege has been codified in the Delaware Rules of Evidence 502. The rule states in pertinent part:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client . . . (3) by the client or the client's representative or the client's lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another in a matter of common interest.

D.R.E. 502(b)(3).

[118] *See* Hartree Privilege Log. The work product doctrine safeguards the "adversary system of litigation by assuring an attorney that his private file shall, except in unusual circumstances, remain free from the encroachments of opposing counsel." *Rembrandt Techs., L.P. v. Harris Corp.*, 2009 WL 402332, at *8 (Del. Super. Ct. Feb. 12, 2009) (quoting *Bristol–Myers Co. v. Sigma Chemical Co.*, 1988 WL 147409, at *2 (D. Del. Jan. 20, 1988)).

Liberty first says that Hartree waived its privilege per the policy's terms.[119] For support, Liberty points to the policy's cooperation clauses contained in Section VI.[120] As Hartree rightly points out, Liberty's argument is plainly refuted by the policy's language. The policy must be construed as a whole, giving effect to all its provisions, not just isolating individual paragraphs.[121] As such, the Court "must read the specific provisions of the contract in light of the entire contract."[122] Here, the same section of the policy identified by Liberty reads, "[n]othing in this Policy shall

---

[119] Liberty's Second Mot. to Compel at 4-7.

[120] *Id.* (citing Compl., Ex. A ("Hartree Policy") § VI (Correspondence; Cooperation; Maintenance of Records)). Specifically, Liberty points to Section VI.A, titled "Cooperation," which states:

> The Insureds shall, at the written request of the Underwriting Representative and to the extent reasonably practicable and legally permissible, provide to the Underwriting Representative copies of any material, formal and written correspondence, pleadings or other material documents relating to such Claim Notice that are delivered or filed by or on behalf of the Insureds, their representatives or any other entity, in each case, to the extent in the Insureds' possession or reasonably available to the Insureds. The Insurers shall cooperate in good faith with the Insureds to preserve the confidential and privileged status of any such correspondence, pleading or other documents.

Hartree Policy § VI.A. Liberty also points to a portion of Section VI.D, titled "Privilege; Fifth Amendment Protection," which states:

> With respect to any documents or information referenced in this Section that are protected by attorney-client privilege, work product doctrine or other privileges, the Underwriting Representative and the Insurers shall cooperate in good faith with the Insureds to preserve the privileged status of any such document or information (including by signing a joint defense or similar agreement acceptable to the Underwriting Representative and the Named Insured).

Hartree Policy § VI.D.

[121] *Salamone v. Gorman*, 106 A.3d 354, 368 (Del. 2014); *see also E.I. du Pont de Nemours & Co. v. Shell Oil Co.*, 498 A.2d 1108, 1113 (Del. 1985) ("In upholding the intentions of the parties, a court must construe the agreement as a whole, giving effect to all provisions therein.").

[122] *Chi. Bridge & Iron Co. N.V. v. Westinghouse Elec. Co. LLC*, 166 A.3d 912, 913–14 (Del. 2017).

be construed to require the waiver of any attorney client privilege, work product doctrine . . . or similar protection."[123] So, Hartree did not waive its right to assert privilege by signing the policy.[124]

Liberty next says that Hartree's communications with Atlantic, Hartree's third-party insurance broker, are not privileged under the common interest doctrine.[125] Hartree counters that both the common interest doctrine and attorney-client privilege protect its communications with Atlantic.[126] A party asserting attorney-client privilege must show that "a communication was made (1) for the purpose of seeking, obtaining or delivering legal advice, (2) between privileged persons, and (3) that confidentiality was intended."[127] Based on the information provided in the privilege log, the communications between Hartree and Atlantic meet all three requirements. Those communications are thus privileged.

In Liberty's view, Hartree's pre-litigation documents and communications aren't protected by the work product doctrine either.[128]

---

[123] Hartree Policy § VI.D. Additionally, Section VI.B says: "In disclosing…information…the Insureds *expressly do not waive any attorney-client privilege associated with such information or any protection afforded by the work-product doctrine . . .*" Hartree Policy § VI.B (emphasis added).

[124] For further support, see *Arch Ins. Co. v. Murdock*, 2019 WL 2005750 (Del. Super. Ct. May 7, 2019) (observing that "[c]ourts have found that insureds do not waive attorney-client privilege by agreeing to cooperate with insurers" and citing *Bituminous Cas. Corp. v. Tonka Corp.*, 140 F.R.D. 381, 386 (D. Minn. 1992) ("This court rejects the conclusion that because an insured agrees to cooperate with the insurance company, in the event he is sued or otherwise makes a claim under the policy, that the insured has thereby forever contractually waived the attorney-client privilege.") and *Remington Arms Co. v. Liberty Mut. Ins. Co.*, 142 F.R.D. 408, 416–17 (D. Del. 1992) (applying Connecticut law and does a survey of other states that also follow the same rule)).

[125] Liberty's Second Mot. to Compel at 6-7.

[126] Hartree's Opp. to Liberty's Second Mot. to Compel at 7-8.

[127] *Rembrandt Technologies, L.P.*, 2009 WL 402332, at *5.

[128] Liberty's Second Mot. to Compel at 7-9.

To qualify for work product protection, "materials [must] be written specifically in preparation for threatened or anticipated litigation."[129] Thus, the doctrine does not encompass "[r]outine business records and other materials gathered in the ordinary course of business" and, accordingly, such documents are "not protected from discovery by an opposing party."[130]

Here, Liberty says that the documents Hartree claims work product protection over were prepared in connection with the claims, not with this litigation.[131] But the documents identified as work product in the privilege log all post-date November 2021, after Hartree filed its insurance claim and after it learned of the Insurers' coverage position.[132] According to Hartree, the pre-litigation documents in question were prepared when "Hartree retained coverage counsel for the purposes of evaluating the possibility of, and preparing to, bring a claim in litigation against Hartree's insurers in the event that they failed to pay for Hartree's losses."[133] That lines up with the dates and descriptions in the privilege log,[134] and the timeline of the case. Thus, the documents and communications there is no principled reason to question applicability of the work product doctrine here.

---

[129] *Zirn*, 621 A.2d at 782 (citing *Riggs Nat'l Bank of Washington, D.C. v. Zimmer*, 355 A.2d 709, 715 (Del. Ch. Apr. 9, 1976)).

[130] *See id.*, 621 A.2d at 782.

[131] Liberty's Second Mot. to Compel at 7-9.

[132] *See* Hartree Privilege Log at 3 (certain documents withheld under the work product doctrine dated as "11/15/2021-11/16/2021"). The 11/15/2021 date is the earliest identified in Hartree's Privilege Log for a document or category of documents withheld as work product.

[133] Hartree's Opp. to Liberty's Second Mot. to Compel at 9.

[134] *See, e.g.*, Hartree Privilege Log at 4 (describing category of documents withheld due to work product as "Documents/Communications between Hartree, Hartree inhouse counsel, and Hartree deal counsel providing, requesting, or reflecting legal advice regarding Hartree's insurance claim in anticipation of or in connection with litigation regarding Hartree's insurance claim.").

Last, Liberty says that Hartree made the claim-related documents and communications "at issue," so they are no longer protected by any possible attorney-client privilege.[135] The "at issue" exception to attorney-client privilege applies when the party holding the privilege waives the privilege in one of two basic ways: (1) the party injects the communications into the litigation, or (2) the party injects an issue into the litigation, the truthful resolution of which requires an examination of the confidential communications.[136] The "at issue" exception is based on the principles of waiver and of fairness, so that the party holding the privilege cannot use it as both a sword and a shield.[137] The exception has also been described as a "waiver . . . where the issue was lack of good faith."[138]

The Court does not find that Hartree has made any and all claim-related documents and communications at issue here. Its communications with counsel weren't injected into this litigation, and there aren't any identifiable issues that relate to those communications either. Thus, Liberty's argument that Hartree has made otherwise privileged documents and communications "at issue" is unpersuasive.

Liberty's motion to compel production of withheld claim-related documents and communications is **DENIED**.

### 3. Request for Itemized Privilege Log

Liberty moves to compel Hartree to produce an itemized privilege log that

---

[135]  Liberty's Second Mot. to Compel at 9-11.

[136]  *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co.*, 623 A.2d 1118, 1122 (Del. Super. Ct. 1992).

[137]  *Id.*

[138]  *Ramada Inns v. Drinkhall*, 490 A.2d 593, 597 (Del. Super. Ct. 1985).

includes post-filing documents.[139]  On August 7, 2023, the Court signed a stipulated-to order governing certain discovery issues, including privilege logs.[140] The Order provided that the "parties shall not . . . be required to log privileged documents or information prepared subsequent to the commencement of this action."[141] And the Order required that any party demanding itemized logging or logging of documents prepared post-lawsuit "explain[] the need" for its request.[142]

In support of its motion, Liberty broadly states that, "[g]iven the significance of the privilege issue presented," Hartree must produce such a log.[143] But Liberty hasn't identified the need for itemization, or for post-litigation documents.  It is also unclear which documents exactly that Liberty is referring to in its request.  Having failed to explain its need more fully and persuade the Court otherwise during argument, the terms Court's August 7, 2023 Order govern.  Liberty is not entitled to now receive an itemized privilege log that includes post-filing documents.

## IV. CONCLUSION

For the foregoing reasons:

Hartree's Motion to Compel Defendant Liberty's Compliance with this Court's Prior Orders and Responses to Plaintiff's Discovery Requests (D.I. 232) is **GRANTED in part and DENIED in part**;

Liberty's Motion to Bifurcate and Stay All Discovery of Hartree's Bad-Faith Claim or, in the Alternative, for a Protective Order Against "Tackett" Discovery (D.I. 233) is **DENIED**;

---

[139]  Liberty's Second Mot. to Compel at 11-12.

[140]  D.I. 135 (August 7, 2023 Order Concerning Certain Procedural and Discovery Matters).

[141]  *Id*. at 14-15.

[142]  *Id*. at 14.

[143]  Liberty's Second Mot. to Compel at 12.

Liberty's Motion for Leave to Serve Requests for Production (D.I. 234) is **GRANTED**;

Liberty's Motion to Compel Plaintiff's Responses to Defendant's Second Request for Production (D.I. 235) is **DENIED**; and,

Liberty's Motion to Compel Plaintiff's Responses to Defendant's Discovery Requests (D.I. 236) is **DENIED**.

**IT IS SO ORDERED.**

/s/ *Paul R. Wallace*

_____

Paul R. Wallace, Judge

cc: All Counsel via File and Serve